GEORGE C. PEAK

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. WRIT OF ERROR—*to county court, in case of bastardy.* Under the new constitution, the Supreme Court has appellate jurisdiction in all cases except where it has original jurisdiction, and art. 6, sec. 19, of the constitution, provides that, "appeals and writs of error shall be allowed from final determinations of county courts, as may be provided by law." The statute having provided no appeal or writ of error from the judgment of the county court, in bastardy proceedings, to the circuit court, it follows that such judgments may be reviewed by this court on writ of error to the county court, to prevent a failure of justice.

2. EVIDENCE—*instruction as to the preponderance.* On the trial of one for bastardy, the court instructed the jury that, "it is not incumbent upon the people to show, by a *clear* preponderance of evidence, that the defendant, etc., is the father of the child charged to be his in the complaint; but it is sufficient if the evidence creates probabilities in favor of that opinion, and that the weight of evidence inclines to that side of the question:" *Held,* that the instruction was erroneous, and calculated to mislead the jury to understand that they might find for the prosecution, though it might not be clear that the testimony preponderated on that side.

3. BASTARDY—*degree of proof required.* While it may be true that, in a prosecution for bastardy, the evidence need not, as in criminal cases, be of such sufficiency as to generate full belief of the fact, to the exclusion of all reasonable doubt, yet it must be sufficient in degree to produce in the minds of the jury a belief of the truth of the charge. It is error to instruct the jury that it is sufficient if it creates mere probabilities in favor of that opinion.

4. SAME—*instruction as to the credibility of a witness.* An instruction that the maxim, "false in one statement, false in all," should be applied

19—76TH ILL.

in cases where a witness wilfully and knowingly gives false testimony; and "if the jury believe, from the evidence, that the defendant, or any other witness, has intentionally sworn falsely as to one matter, the jury may properly reject his whole statements and testimony as unworthy of belief," was held to be erroneous, for want of the words "unless corroborated," and as not requiring that the matter sworn to should be material.

WRIT OF ERROR to the County Court of Scott county; the Hon. THOMAS P. ROWEN, Judge, presiding.

This was a prosecution against George C. Peak, for bastardy, on the complaint of Elzina Laws. The defendant was convicted, and this writ of error is prosecuted by him to reverse the judgment.

Mr. JOHN G. HENDERSON, Mr. N. M. KNAPP, and Mr. JAMES M. RIGGS, for the plaintiff in error.

Mr. JAMES M. EPLER, for the People.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

A preliminary question is raised here as to whether the writ of error lies, it having been sued out to the county court from a judgment of conviction there, in a bastardy proceeding. This case was once before this court on appeal from the circuit court, and the judgment of that court was reversed, and that of the county court left in force, the court holding that, as no appeal to the circuit court had been provided by statute in this class of cases, none would lie to the circuit court, or thence to this court. The plaintiff has now sued out a writ of error from the judgment in the county court.

The "Act concerning Bastardy," Laws 1871–2, p. 198, under which the case was instituted and prosecuted to judgment, does not provide for any review whatever of the proceedings of county courts in such cases. Unless this writ of error lies, the judgment of the county court is final and beyond review.

Section 8, article 6, of the present constitution provides that, "Appeals and writs of error may be taken to the Supreme Court held in the grand division in which the case is decided."

There is no limitation to any particular class of courts. Sec. 2, art. 6, provides that the Supreme Court shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus*, "and appellate jurisdiction in all other cases." If this writ of error can not be maintained, then there is one class of cases in which this court has not appellate jurisdiction. It is not claimed that writs of error must be allowed, or that they are allowable, directly, to the county courts in all cases.

Where appeals to the circuit court are provided for, a party can avail himself of his constitutional right to have his case reviewed by this court by coming here through the circuit court. But in this case no appeal to the circuit court was provided, nor writ of error. Art. 6. sec. 19, of the constitution, provides that, "Appeals and writs of error shall be allowed from final determinations of county courts, as may be provided by law."

No writ of error here has been provided by statute. But, "A writ of error is a writ of right by the common law, and lies in all cases, civil and criminal, except capital cases, but can, of course, be regulated by statute." *Unknown Heirs of Langworthy* v. *Baker*, 23 Ill. 487. See also *Bowers* v. *Green*, 1 Scam. 42; *McClay* v. *Norris*, 4 Gilm. 370.

If provision by law, further than the constitution, be needed to authorize the writ, it is to be found in the common law. A right of appeal exists only by virtue of some statute giving it, being merely a statutory right. But it is otherwise with a writ of error. A writ of error to the circuit court, it is true, is expressly provided for by statute, but it was said, in *Unknown Heirs of Langworthy* v. *Baker*, *supra*, that, without the statute, it could be prosecuted as a writ of right belonging to all persons by the common law; and it was there

held that, no appeal being allowed from the final order of the county court to the circuit court in that case—being an application by an administrator for the sale of the real estate of a decedent to pay debts—it would follow, necessarily, to prevent a failure of justice, that error should lie to this court.

In *Schlattweiler* v. *St. Clair County*, 63 Ill. 449, the right to a writ of error was held to be a constitutional right.

*Holden et al.* v. *Herkimer et al.* 53 Ill. 258, which has been cited as an opposing authority, is consistent.   That case was one of a writ of error to the Common Pleas Court of the city of Mattoon, and the writ was held not to lie.   But there the statute gave a right of appeal to the circuit court.   There was no necessity for the writ of error to  prevent a failure of justice.   An appeal might have been taken to the circuit court, and from the decision there, by appeal or writ of error, the judgment of this court might have been had on the case. Had there been no appeal to the circuit court, the decision would have been to the contrary, to be in conformity with *Unknown Heirs of Langworthy* v. *Baker, supra,* and there was no intention to overrule the latter case.   We hold that the writ of error lies.

The county court gave the following instructions to the jury, on behalf of the people :

"The court instructs the jury that, in  this  case, it is not incumbent upon the people to show, by a *clear preponderance* of evidence, that the defendant, George Peak, is the father of the child charged to be his in the complaint, but it is sufficient if the evidence creates probabilities in favor of that opinion, and that the weight of evidence inclines to that side of the question."

"The court further instructs the jury, for the people, that the maxim, 'false in one statement, false in all,' should only be applied in cases where a witness wilfully and knowingly gives false testimony.   And if the jury believe, from the evidence, that the defendant, or any other witness, has intentionally

sworn falsely as to one matter, the jury may properly reject his whole statements and testimony as unworthy of belief."

The first instruction is, doubtless, suggested by the ruling in *Crabtree* v. *Reed*, 50 Ill. 206, that it was erroneous to instruct that there must be a clear preponderance of evidence in favor of the plaintiff, to entitle him to recover.

But if the instruction in that affirmative form was improper to be given for the defendant, it does not follow that it would be proper to give for the plaintiff the instruction in the negative form, as in this case. The objection to the affirmative form is, that it is calculated to lead the jury to understand that the preponderance must be clear, beyond a reasonable doubt. The objection to the negative form, as here, is, that though the testimony may leave the mind so in doubt that the jury can not tell which way it preponderates, yet, as it is not necessary that the preponderance should be clear to their minds, they may justify themselves, without seeing a preponderance, in deciding in the direction of their partialities. The instruction here was calculated to mislead the jury to understand that they might find for the prosecution, though it might not be clear that the testimony preponderated on that side. A preponderance was necessary, and there should have been nothing of a hint to the jury that anything less would do.

We think the instruction was erroneous in this respect, and also in the further respect, that "it is sufficient if the evidence creates probabilities in favor of that opinion, (that Peak is the father of the child,) and that the weight of evidence inclines to that side of the question."

We think it was erroneous to say that the hypothetical proof stated would be sufficient, without any reference to the degree of the probability, or strength of the evidence, as being sufficient to satisfy the jury of the truth of the charge. It was for the prosecution to make proof of their case to the satisfaction of the jury. The evidence, perhaps, need not, as

in criminal cases, have been of such sufficiency as to generate full belief of the fact to the exclusion of all reasonable doubt, but it must have been sufficient in degree to produce in the minds of the jury a belief of the truth of the charge. Had there been evidence producing merely a slight probability in favor of an opinion of guilt, or any evidence, however weak, tending to its proof, and no evidence on the other side, there would have been created a probability in favor of the plaintiff, and the weight of evidence would have inclined that way, and upon such evidence, under the instruction, the jury would have been justified in finding for the plaintiff. The jury should not be so instructed that, by an artificial rule laid down to them, they may feel warranted to find one way or the other, without their minds being satisfied as to the truth of the fact in dispute. See *Parker* v. *Johnson*, 25 Ga. 577; *Mays* v. *Williams*, 27 Ala. 268; *Long* v. *Hitchcock*, 9 Carr. & Payne, 619; 1 Stark. Ev. 543.

The second instruction is erroneous, as being too broad, in not having added to it the words, "unless corroborated," as this court has often decided.

In *Blanchard et al.* v. *Pratt*, 37 Ill. 243, in reference to a similar instruction, the court say: A witness may swear falsely as to one important fact, but in regard to other facts he may be corroborated by the testimony of other witnesses. In such case the jury would not be justified in discarding his whole testimony; therefore, the court should have added to the words, "unless corroborated;" and so in *Crabtree* v. *Hagenbaugh*, 25 Ill. 233; *Meixwell* v. *Williamson*, 35 id. 529.

Another defect in the instruction is, in not requiring the matter sworn to, to be material. No liability to the legal punishment of perjury results from wilful false swearing to an immaterial fact. The full obligation of the compulsory power of a judicial oath does not bear, in such case, upon the witness.

The judgment is reversed and the cause remanded.

*Judgment reversed.*