# THE HARTFORD LIFE AND ANNUITY INSURANCE CO.

## *v.*

## HARTWELL GRAY *et al.*

1. SUBSCRIBING WITNESS—*when execution of instrument may be proved by other evidence.* It is not necessary to produce the subscribing witness to testify to the execution of an instrument when he is beyond the reach of the process of the court, or, upon diligent inquiry, can not be found. In such case the execution may be proved by other evidence.

2. INSURANCE—*application for policy presumed to be made by the party signing it.* It may be shown, in actions upon insurance policies, that the applicant for the policy did not, in fact, make the representations as shown by the application, and that the application was filled out by the agent of the company, who inserted the statements claimed to be false, of his own accord, but the court will not, in the absence of proof, presume the application was thus made out, but, on the contrary, that the party signing it knew and indorsed its contents.

3. WRITTEN INSTRUMENT—*burden of proof is on party denying that he knew the contents, when he signed it.* When the genuineness of a signature to an instrument is established, it affords *prima facie* evidence that the contents of the instrument were known to the subscriber, and that it is his act, and hence the burden of proof is upon those who assert the contrary, to overcome this *prima facie* evidence.

4. WITNESSES—*when testimony of, may be disbelieved by the jury.* The jury are at liberty to disbelieve the evidence of a witness who has been impeached in any of the modes recognized by law for impeaching witnesses, which may include not only direct contradictions and evidence of bad character, but also the inherent improbabilities of his statements, and his manner and appearance while testifying; but they can not go beyond this, and determine for themselves that other circumstances, not within legal contemplation, tending to impeach the witness, show that his evidence is impeached, and therefore entirely disregard it.

5. SAME—*how weight of testimony to be determined by the jury.* The effect of testimony may depend in some degree on circumstances other than those which are regarded as directly tending to impeach a witness—such as his opportunity for knowing that to which he testifies, the strength or weakness of his memory, his interest in the question, and even his temperament— but here also the jury are limited, and can only consider those circumstances which in human experience are known to affect perception, memory and judgment.

6. SAME—*testimony of can not be wilfully disregarded unless impeached.* A jury can not wilfully disregard the testimony of an unimpeached witness; whilst they may judge of the credibility of a witness, they must exercise judgment, and not merely their will, in doing so.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. HITCHCOCK & DUPEE, for the appellant.

Messrs. BONNEY, FAY & GRIGGS, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question first to be considered is, was secondary evidence of the application for the policy properly received? for, if it was not, the ground of defense entirely fails.

It was witnessed by "Capt. B. Wheeler," and it is insisted by appellees that its execution must be proved by him.

It has been held by this court that it is not necessary to produce the subscribing witness to testify to the execution of the instrument, when he is beyond the reach of the process of the court. *Wiley et al.* v. *Bean et al.* 1 Gilm. 302; *Newsom* v. *Luster*, 13 Ill. 175; *Miller* v. *Metzger*, 16 id. 390. And the same rule obtains if the witness can not be found, on diligent

inquiry. *Clark* v. *Sanderson*, 3 Binney, 192; *Jackson ex dem.* v. *Gager*, 5 Cowen, 383; *Jackson ex dem.* v. *Cody*, 9 Cowen, 140; *Ingram* v. *Hall*, 1 Hayw'd, 207; *Jackson ex dem.* v. *Root*, 18 Johns. 60; *Whittemore* v. *Brooks*, 1 Greenleaf, 59; *Baker* v. *Blount*, 2 Hayw'd, 404; *Lansing* v. *Chamberlain*, 8 Wend. 620; *Note to Jones* v. *Cooprider*, 1 Blackf'd. 49; *Spring* v. *The South Car. Ins. Co.* 8 Wheaton, 269.

The evidence shows that the witness left Belvidere, the place where the instrument was subscribed, and was last heard of in Wisconsin. An agent of the company, at Belvidere, testifies to this, and also that he has made inquiries as to his whereabouts, and endeavored to find him, but has been unable to do so. We think this was sufficient to authorize the introduction of other evidence of the execution of the instrument.

We are also of opinion that the evidence of the genuineness of the signature of Morey to the application was sufficient for the purposes of the case, standing, as it does, uncontradicted.

The next question is, was it incumbent on the company to prove that Morey filled up the blank application, or that he was acquainted with the contents of the application when he signed it; or is it incumbent on the plaintiffs to show that he was ignorant of the contents of the application when he signed it, in order that they shall be relieved from its representations?

It has been several times laid down, in previous decisions, as the rule recognized by this court in such cases, that it may be shown the applicant for the policy in fact did not make the representations as shown by the application; but that the application was filled out by the agent of the company, he inserting the statements claimed to be false, of his own accord. It has, however, never been ruled that the court will, in the absence of all evidence, presume the application was thus made out, and we have been referred to no decision elsewhere announcing such doctrine. Numerous cases are referred to by the counsel for appellees, holding that insurance companies, establishing local agencies, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agents, within the scope of their apparent

employment, as if they proceeded from the principal; and that policies will not be avoided for errors by the agents, acting within the apparent general scope of their powers, on the artificial and unwarranted assumption that they are agents of the applicants for policies. But, so far as our observation has gone, in all the cases, the onus was on the party denying that the application was the act of the person by whom it was signed, to prove the circumstances which justified the denial.

We are of opinion, when the genuineness of a signature to an instrument is established, it affords *prima facie* evidence that the contents of the instrument were known to the subscriber, and that it is his act, and hence that the burden is upon those who assert the contrary, to make such proof as shall overcome the *prima facie* evidence.

There was no evidence introduced, on the trial below, tending to prove Morey was ignorant of the contents of the application; that it was filled up contrary to his direction, or without his knowledge; or that any representations were made to him by the agent of the company.

The court, at the instance of the plaintiffs, instructed the jury " that they are the judges of the credibility of witnesses, and of the weight of evidence. They may believe and accept, or disbelieve any testimony which, under all the circumstances of the case, is not credible and entitled to weight in deciding the issue in this case." This is entirely too comprehensive in its terms. The jury are at liberty to disbelieve the evidence of a witness who has been impeached in any of the modes recognized by the law for impeaching witnesses, which may include not only direct contradictions and evidence of bad character, but also the inherent improbabilities of his statements, and his manner and appearance while testifying; but they can not be allowed to go beyond this, and determine for themselves that other circumstances, not within legal contemplation, tending to impeach the witness, show that his evidence is impeached, and therefore entirely disregard it. The effect to be given to evidence, it is true, may depend, in some degree, on circumstances other than those which are regarded as di-

rectly tending to impeach a witness, such as his opportunity for knowing that to which he testifies, the strength or weakness of his memory, his interest in the question, and even his temperament—but here, also, the jury are limited, and can only consider those circumstances which, in human experience, are known to affect perception, memory and judgment. The form of the instruction is calculated to mislead. What circumstances in the case tend to discredit any particular part of the evidence, or what is necessary for that purpose, is not indicated. The jury might well understand, from the instruction, that it was left to them to determine, without restriction, whom to believe or to disbelieve.

In *Robertson* v. *Dodge*, 28 Ill. 161, it was held, a jury can not wilfully disregard the testimony of an unimpeached witness; that while they may judge of the credibility of a witness, they must exercise judgment, and not will, merely, in doing so.

In *Evans* v. *George, post,* 51, this precise form of instruction was condemned.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*