THE HARTFORD LIFE AND ANNUITY INSURANCE COMPANY

*v.*

HARTWELL GRAY *et al.*

1. LIFE INSURANCE—*on false representations by assured.* No recovery can be had upon a life policy of insurance which is obtained by fraud and misrepresentation on the part of the assured as to material facts affecting the risk, and the age of his parents at their death and the disease of which they died, and the fact whether the brothers and sisters of the assured were all living are material and must be truly stated in the application.

2. Where the assured in his application answers "no" to the question, whether either of his parents, brothers or sisters ever had pulmonary, scrofulous or other constitutional or hereditary disease, the answer assumes his knowledge of the fact, and will preclude the plaintiff, in an action on the polcy, from alleging the want of knowledge on the part of the assured as an excuse for not answering correctly.

3. SAME—*knowledge presumed of answers in application.* There is no presumption that an applicant for a policy of insurance was ignorant and misinformed of the contents of the application signed by him, but it devolves upon those alleging such ignorance and want of information to make proof of it. This proof may be found in the peculiar circumstances shown as attendant upon the transaction, but is not established by the mere fact that the assured signed a paper written out by another, when no attempt is made to mislead or deceive him.

4. PLEADING AND EVIDENCE. In an action on a life policy of insurance issued upon a written application, which is destroyed, when it is stipulated that the defendant may show any valid defence under the general issue the same as if specially pleaded, the pleadings will not bind the defendant to strict proof of any particular expression or phraseology in the application.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an action of assumpsit, brought by Hartwell Gray and Stephen Lambert, executors of the last will and testament of Charles A. Morey, deceased, against the appellant, upon a policy of insurance upon the life of said Morey.

The defendant pleaded the general issue, and it was stipulated, that under this plea the defendant might introduce evidence and prove any valid defence to the cause of action set

up in the plaintiff's declaration as fully as though such defence had been specially pleaded; and that any and ·all causes of action arising on the policy declared on might be litigated under the declaration filed, without regard to any matter of form or technical objection.

A trial was had, resulting in a verdict in favor of the plaintiff for $5590 damages.    The defendant moved for a new trial, whereupon the plaintiffs entered a *remittitur* of $70, and the court then overruled the motion for a new trial and rendered judgment against the defendant for $5520.

Messrs. HITCHCOCK, DUPEE & JUDAH, for the appellant.

Messrs. BONNEY, FAY & GRIGGS, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal is prosecuted for the purpose of obtaining a reversal of a judgment of the circuit court of Cook county against appellant and in favor of appellees, on a certain policy of life insurance.

The policy is dated June 15, 1869, and purports, " in consideration of the representations made in the application for this policy and of the quarterly premium  *  *  *  to be paid," to assure the life of Charles A. Morey for the benefit of his heirs, in the sum of $4000, for the term of his natural life.    It contains the provision that it " is issued and accepted by the assured upon the following expressed conditions and agreements:

" If the declaration made in the application for this policy, or if any statement respecting the person or family of the one whose life is hereby assured, submitted by the assured to this company, and upon the faith of which application and statements this policy is issued, shall be found in any respect untrue, then and in every such case, all right or claim to the amount assured by this policy shall terminate and be forfeited, and the company shall not be liable for any payment under

the terms hereof, excepting the cash value of the policy, and any additions thereto, such cash value to be paid at the death of the assured and to be computed at the time of such forfeiture, and upon an assumption of mortality at the rates in the actuary's table, and at a rate of interest at four per cent per annum."

The evidence shows that the issuing of the policy was preceded by a written application on behalf of and signed by the assured, which has been since destroyed by fire. This is not seriously controverted by appellees, but there is controversy as to its precise terms. Appellant produced and gave in evidence, on the trial, what it claims was an exact copy of this application. It contains the following questions and answers:

" 10.   Have you ever had spitting of blood, inflammation of lungs, consumption, or diseases of any vital part?   A. None whatever."

" 13.   Do you now possess a sound constitution and good health?   A. Yes."

" 15.   Are your parents living or dead?   A. Both dead."

" The causes of their death and their ages at time of death? A. Father died of fever, aged fifty-eight; mother of fever, fifty-four."

" How many brothers and sisters have you had?   A. One brother and three sisters; two sisters are living, with good health; brother's health is excellent; my grand parents are dead; don't know the cause of their death; I most resemble my father."

" 17.   Have either of your parents, brother or sisters ever had pulmonary, scrofulous or any mental or constitutional or hereditary disease?   A. No."

On the same page, at the conclusion of the questions and answers, is the following:

" DECLARATION.—It is hereby declared and warranted, that the above answers and statements are true; and it is agreed that this declaration and warranty shall be the basis of the

11—91 ILL.

contract between the undersigned and said Hartford Life and Annuity Insurance Company, and that the undersigned will accept a policy for the amount stated above, subject to the conditions, stipulations and provisions prescribed therein.

Dated at Belvidere, Ill., this 4th day of June, 1869.

CHARLES A. MOREY.

Signed in the presence of Capt. B. Wheeler, witness."

It was stipulated by the parties, on the trial, among other things, as follows:

" In case defendant shall, during the trial, reach a point where it becomes material to prove whether the question in any application that shall be proved to have been made by said Morey to said company for said policy, relating to consumption or pulmonary diseases, in said Morey or his parents, or questions relating to the causes of death of such parents, called for information material to the risk on the life of the insured under said policy, then plaintiffs admit that the same are material, but do not admit the existence or authenticity of such application."

The assured died September 24, 1870, but before his death appellant had declined to receive the premiums on the policy, on the ground that the policy had been obtained by fraud and misrepresentation.

The evidence is uncontradicted and ample that the brother of the assured was dead, when he made the application for the policy—that the parents of the assured did not die of fever —the father at the age of fifty-eight and the mother at the age of fifty-four, but that, on the contrary, both parents died of pulmonary consumption more than twenty years before the application, the mother dying some two or three years later than the father, and the father being, at the time of his death, only forty-six years of age. The materiality of these representations, if made, being conceded and their falsity clearly proved, it only leaves us to inquire whether they were, in fact, made.

As before observed, that some kind of a written application

for the policy was made, is clearly proved, and not seriously controverted.    One witness swears that the copy produced is an exact copy of the application of the assured.    The only evidence that we regard as of any importance tending to contradict this, is that of Dr. Angell, who says that, by request of appellant's agent, he, as a physician, examined the assured for the policy in litigation and indorsed his certificate on the application of the assured.    He thinks he was present when the assured signed the application.    He says the questions in this copy are nearly the same as in the original application, but that the answers differ in this, that in the original the answer to the question, "have you ever had any of the following diseases," the answer instead of being, as in the copy, "none whatever," was, "none whatever—except bronchitis— a slight bronchitis."    He says his certificate, indorsed on the original application, differs in these respects from that on the copy, that in the question, "has he ever had any severe, injurious illness," I asked him that question and he said, "no;" I told him at the time that I wanted him to tell me, as I had not treated his case.    The words, "except a slight bronchitis," are omitted from this.    The answer I wrote was, "except a slight bronchitis."    To the question, "have his parents, brothers or sisters ever been afflicted with pulmonary or other diseases, hereditary in their nature," and it says, "has not," I put two dots.    I answered another question above, "has he any predisposition, hereditary or acquired," "has not to my knowledge," and when I came to this question, I dotted it instead of writing again.    I don't remember any other respect in which this copy differs from my certificate."

He further says, that his *impression* is, that in the original application of the assured he stated that one of his parents died from fever, and that the other he did not know.    He also states, that his examination of the assured was commenced on one day and not concluded until the next, and that the application and his certificate thereon were not signed until the second day.    He does not know whether the assured read

the application or not,—thinks the answers were written out by appellant's agent. He himself, however, read some portions of the application to the assured.

On cross-examination he says, appellant's agent requested him to look over the application, and he thinks he did so before the assured signed it; that he asked the assured if he had ever had any of the diseases mentioned in the question, and he said, "none, except bronchitis;" that appellant's agent then said, "you need not put that in," so witness modified it, and put "slight bronchitis" in his certificate. He concludes thus: "The certificate and application in evidence are the same as those I saw, so far as I can remember, except as I have stated."

Assuming that the jury were warranted in giving implicit faith to the testimony of this witness, so far as it amounts to a statement of what the certificate contained, it will be observed the modifications in appellant's evidence are but slight, and of no serious consequence, so far as affects the merits of the present controversy. It is not claimed by appellant that there was fraud or misrepresentation in respect to the diseases with which the assured had been afflicted previous to making his application. The fraud and misrepresentation chiefly complained of, are in respect to the diseases of which his parents died, and the respective ages of his parents at the time of death.

It must not be understood that, in the application, the *assured* stated, in answer to the question, "Have his parents, brothers or sisters ever been afflicted with pulmonary or other diseases hereditary in their nature?"—"Has not, to my knowledge." This was the answer of the witness alone, to the question propounded to and answered by him, and set forth in the certificate which he indorsed on the application as examining physician. The answer of the assured to the question, "Have either of your parents, brothers or sisters ever had pulmonary, scrofulous, or any mental or constitutional or hereditary disease?"—was "No," and this stands

uncontradicted by the witness.    The witness might, doubtless, answer, "not to my knowledge," to the somewhat similar question propounded to him, quite truthfully, for it does not appear that he had any knowledge whatever of the parents or brothers or sisters of the assured.    But the assured ought to have had the knowledge to answer this question intelligently and accurately, and his answer assumes that he had such knowledge, and, therefore, precludes the right of appellees to allege his want of knowledge as an excuse for his answer.

The *impression* of the witness that the assured only said that one of his parents died of a fever, and that he did not know of what the other died, does not amount to evidence. He does not state it as a fact, nor even as an indistinct recollection of a fact, but an impression only,—whether originating from a dream, or otherwise, is an unimportant matter of conjecture.    Witnesses can only testify to what they recollect, not to that of which they may be impressed, only.

There is no question, here, of contradicting written evidence by parol.    The question is simply, what was the writing? And the pleadings bind appellant to the strict proof of no particular expressions or phraseology.    If the written application was as described by Dr. Angell, and not as described by appellant's witness, appellant is equally entitled to the benefit of it, as it is shown to have been.

We held, when the present case was before us at a former term, *Hartford Life Ins. Co.* v. *Gray et al.* 80 Ill. 28, that the genuineness of a signature to an application for a policy being proved, there was no presumption that the applicant was ignorant and uninformed of the contents of the application, but that it devolved upon those alleging such ignorance and want of information to make proof to sustain the allegation.    This proof might, undoubtedly, be found in the peculiar circumstances proved as attendant upon the transaction, but there should be proof, other than the mere fact that the party signed a paper written out by another, to show that he did not know and comprehend the nature and effect of his act.

Instead of the evidence, here, warranting the belief of ignorance in the assured as to the contents of his application, the effect is directly the reverse. There is no attempt at proof that any effort was made to deceive or mislead him. The application was pending for two days, during which time the assured was examined and re-examined by the physician, and a portion, at least, of the application was also read to him by the physician before he signed it. The deliberation and care manifested by this medical examination preliminary to the completion of the application, was, of itself, ample notice that correctness and fullness in statement as to all that affected his liability to disease were required. He is not shown to have been unable to read, or wanting in ordinary intelligence. The statements of the application were before him, and no effort was made to prevent his reading them or having them read by others as often as he chose. His act has every appearance of having been wholly uninfluenced, voluntary and deliberate.

The evidence that both parents died of pulmonary consumption, of which they had each suffered for several years before their respective deaths, is all one way. It is proved by relatives, neighbors and physicians, and it is not reasonable to assume that the assured was even ignorant of this fact, for he seems to have been living with or near his parents during the time they were thus afflicted. There is no effort to prove that either of them died of a fever, or were even ever sick of a fever. The disease of which they died is generally believed to be hereditary, and it is impossible to escape the conviction that the truth, here, was withheld, because its communication would have either defeated the application for the policy, or materially increased the premiums for the risk.

We think the judgment is clearly unwarranted by the evidence, and it must, therefore, be reversed and the cause remanded.

*Judgment reversed.*