Reed, P. J.,
delivered the opinion of the court.
A great mass of testimony was taken, covering nearly one hundred pages of printed abstract, and part of Which was depositions and documentary. The evidence shows conclusively that at the time that Hepner purchased the goods in question from appellees he was hopelessly insolvent and that within about thirty days after the last purchase was closed up by the sheriff; also that Hepner made to appellees and their agent false and fraudulent statements in regard to his solvencjq the amount he was worth and his liabilities. It was also testified by appellees and Metz, their agent, that the sale was induced and made by appellees upon the false statements of Hepner. It was also shown that the goods were delivered,-went into the 'general stock of Hepner upon his shelves, and were identified and taken out of the stock upon writ of replevin.
The questions presented are of law': 1st. Whether appel-: lees could under the conditions and circumstances rescind the contract of sale and retake the goods. 2d. In regard to; the instructions of the court given and refused.
There are several minor questions presented by assign-, ments of error based upon the admission and refusal of evidence. Although, perhaps, the rulings in some minor respects ■ were open to criticism, we find no serious error that could have *264 prejudiced appellant or changed the result. One supposed error may be briefly examined :
Hepner was asked: “ Q. At the time you made this purchase of Kaufman Bros., you may state at that time what, if anything, was your ability to pay whatever you purchased of them ? ” Objection sustained. “ Q. State why you did not continue business?” Objection sustained. “Q. State if you expected to go on and continue business ? A. Yes.” Stricken out. It is claimed that for the purpose of rebutting the presumption of fraud the explanatory statements should have been received. We cannot see that any answers that might have been given to the questions asked would have had that effect. The statements made to Kaufman were in regard to his financial condition, that he had a stock worth $12,000, $2,000 or $3,000 in available book accounts, that he only owed $3,000. The figures were given by Hepner,— stated as facts. If absolutely untrue, the fact must have been known to him. The rebuttal could not be explanatory or apologetic. Rebuttal could only have been by evidence that he never made such statements, or that they were true. If false, they must of necessity have been so known at the time. If insolvent, as shown at the time, the law presumes, and the jury had the right to presume, that the statements were made fraudulently for the purpose of obtaining the goods.
In support of the contention, counsel cite 1 Benj. on Sales, sec. 630, and Pope v. Hart, 35 Barb. (N. Y.) 630. In the first, -in section 636, the broad, general rule is stated as follows : “ Fraud renders all contracts voidable ab initio, both at law and in equity. Ho man is bound by a bargain into which he has been deceived by a fraud, because assent is necessary to a valid contract, and there is no real assent where fraud and deception have been used as instruments to control the will and influence the assent.” See, also, Bank v. Higginbottom, 9 Pet. (U. S.) 48; Duncan v. McCullough, 4 Sergt. & R. (Pa.) 483.
The rule is also stated to be that the fraud that warrants *265 the rescission and renders it voidable ab initio was believed, acted upon and was successful in deceiving; in other words, that without the fraud the transaction would not have been made. See, 1 Benj. on Sales, sec. 637.
In Pope v. Hart, supra, it is held that a party charged with an intent to deceive, or cheat, or defraud, or with fraud and deceit, has a right to testify in his own behalf that he did not intend to cheat, deceive or defraud, and that the weight of such testimony was for the jury; but on examining the case it is found to be a criminal prosecution. No question of the ownership of property or rescission of a contract of sale was involved.
If such a rule is to prevail in cases of this character, a party may fraudulently obtain possession of property, swear afterwards as to his intention, and, if believed, establish title, when a different intention was clearly deducible from the facts proved.
The most comprehensive and concise statement of the law of this case is at 1116 of the Civil Code of France: “ Fraud is a ground for avoiding a contract when the devices practiced by one of the parties is such as to make it evident that without these devices the other parties would not have contracted.”
The decisions of Pennsylvania and Indiana are of the extreme in favor of appellant. In Smith v. Smith, 21 Pa. St. 367, and Rodman v. Thalheimer, 75 Pa. St. 232, it is said : “ The fraud to avoid a sale must be actual artifice intended and fitted to deceive.”
In Gregory v. Schoenell, 55 Ind. 101, the court said:
“In such a case, to establish fraud, and authorize a rescission of the contract for that cause, the representations made must have been such as were calculated to deceive a person of common prudence; they must have been false, and known to be false, at the time, by the person who made them, and the person to whom they were made must have believed them to be true, and relied upon them; and they must have been the inducement which caused him to part with his prop *266 erty. A fraud, by which no one is deceived, is harmless in law.”
Artifices which do not deceive do not warrant an avoidance of the contract. Tested by these, and the case made by appellees, brought it within the rule. As before stated, these are the strongest decisions that can be found to support the contention of appellant. That it is not necessary that the false representations should have been the sole cause or even the predominant motive, and that it is enough if they had material influence upon the plaintiff, though combined with other motives, see Safford v. Grout, 120 Mass. 20; Matthews v. Bliss, 22 Pick. (Mass.) 48; Ruff v. Jarrett, 94 Ill. 475; McAleer v. Horsey, 35 Md. 439; Hersey v. Benedict, 15 Hun (N. Y.), 282; Addison on Cont., *1173; Load v. Green, 15 M. & W. (Eng.) 216; White v. Garden, 10 C. B. (Eng.) 919.
In 2 Parsons on Cont., *773, it is said: “ It is clear that if a purchaser makes false representations of his ability to pay, his property, or credit, the sale is void, and no title passes as between the original parties to the contract; ”—. citing Cary v. Hottailing, 1 Hill (N. Y.), 311; Andrew v. Dieterich, 14 Wend. (N. Y.) 31; Johnson v. Peck, 1 Woodb. & M. (U. S. C. C.) 334; Lloyd v. Brewster, 4 Paige (N. Y.), 537.
In addition to what has been before said, I may add that where there is direct proof of false representations, and they are not denied, but tacitly admitted, and also proof that such false statements induced the sale, the testimony of the party as to his intentions in making them could not be competent to divest the injured party of ownership of the goods. The facts established were such as to avoid the sale and warrant a rescission.
Error is assigned upon the sixth instruction given by the court. It is contended that it is not the law, and counsel say: “ The proposition that the jury has the right to disbelieve such witnesses as in their judgment, under all the cir *267 cumstanees in the case, are unworthy of belief, is not the law.”
This is' certainly very ambiguous. There 'is no attempt to apply it to any witness of appellant or to the testimony of any particular fact, and the instruction is so general that it ápplies equally to the witnesses of appellee, and, if erroneous, it is not shown that it in any way prejudiced appellant.
Counsel in support of their contention cite Gottlieb v. Hartman, 3 Colo. 53, and Hartford Life Ins. Co. v. Gray, 80 Ill. 28.
We do not consider those cases applicable. In both the inference from the instruction was that the jury might wilfully disregard the testimony of any witness on their own judgment as to his veracity. We do not so construe the instruction in question. Though amplified and elaborated, it only amounts to the well-established rule that the jury are judges of the credibility of witnesses, and in determining it were to consider the situation of the witness in regard to the controversy and the circumstances “ which, in human experience, are known to affect perception, memory and judgment.”.
Error is also assigned upon the eighth instruction, but, upon examination, it appears to have been clearly in favor of appellant, and fully as strong, if not stronger, than warranted.,
The instructions asked bjr appellant were properly refused. Some of them were clearly objectionable. Those given were sufficient to inform the jury in regard to the law of the case.
The judgment should be affirmed.

Affirmed.