# Susan E. Reigel, Appellee, v. Des Moines Life Insurance Company, Appellant.

1. VERDICTS—*when set aside as against the evidence.* A verdict clearly and manifestly against the weight of the evidence will be set aside on review.

2. INSTRUCTIONS—*when as to effect of introduction of promissory note erroneous.* An instruction which tells the jury that the introduction of a promissory note is only *prima facie* evidence of execution and indebtedness and that unless they find after a full consideration of all the evidence that plaintiff at the time she is alleged to have signed said note knew and understood the nature of the paper she was signing and knowingly signed it and that she was then indebted to the defendant for the account named therein, the said note should not be allowed as a set-off against the demand of the plaintiff on the policy sued on, *held,* erroneous, first, because such instruction stated the law to be that the note introduced in evidence was only *prima facie* evidence of the execution and indebtedness and to give it effect in this case required additional proof that the plaintiff knew the nature of the paper when she signed it and knowingly signed it and second because the instruction as a whole might readily lead the jury to believe that notwithstanding it appeared the plaintiff signed the note in question yet the burden was on the defendant to show that she at the time of signing understood its nature and knowingly signed it.

Assumpsit. Appeal from the Circuit Court of Crawford county; the HON. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 21, 1912.

CASPER SCHENK and MCCARTY & ARNOLD, for appellant.

PARKER & EAGLETON and GEORGE W. JONES, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought this suit on a life insurance policy issued by appellant, to recover the guaranteed cash

surrender value of the same, amounting to $504, together with the accumulated surplus claimed to be $107.10.

Appellant filed a plea of general issue, a tender of $248.26 and general issue as to the balance, a plea of set-off to the amount of a note of $271 with accrued interest and also another plea it denominates "a common count set-off" of $362.84.

Appellee filed replications, which among other defenses denied the execution of the note, under oath, alleged that the same was procured by fraud and circumvention and also that it was without consideration. There was a judgment in favor of appellee for $504, which appellant claims should not be permitted to stand for the reason that the proofs did not sustain the verdict, upon which the same was based, and because the court below committed prejudicial error in instructing the jury.

On November 21, 1894, appellee took out an ordinary life insurance policy, in the Des Moines Life Association for $1000 payable to her husband, Morton T. Reigel. She was then 37 years of age and the annual premium on her policy was $14.40. On February 11, 1903, after appellee had paid nine annual premiums on the policy and also a guaranty note of $10, a total of $139.60, one of appellant's agents came to her and induced her to exchange her policy for the one sued on, a fifteen year payment life policy, which provided that after fifteen annual payments had been made appellee should have a paid up policy for $1000, payable to her husband at her death, or the policy should have a guaranteed cash surrender value of $504 at its maturity. The premium on this policy was $42.47 and was based on the age of appellee at the time she took out the first policy above mentioned. The policy sued on contained the following statement:

"This policy is granted in consideration of the sur-

render of policy No. 11637 bearing date the 21st day of November, 1894 on the life of the assured, issued by the Des Moines Life Association (in exchange for which this policy is issued), and in further consideration of the payment of the premiums on this policy to the 21st day of November, 1904, the receipt whereof is hereby acknowledged and in further consideration of the payment of subsequent premiums of forty-two and 47|100 dollars to be paid on or before noon of the 21st day of November in every year, until the 21st day of November, 1909.''

It was also shown by the proofs that the premium of $42.47 provided to be paid by this policy was the regular premium on policies of this character issued to applicants 37 years of age. The agent who made the exchange, Mr. Skinner, testified it was made on the following basis: Starting with the date of the old policy he charged appellee with ten annual payments, including therein the one next to fall due, at the annual rate to be paid on the new policy of $42.47 amounting in all to $424.70. He then credited her with the nine premiums paid on the old policy and the guaranty note of ten dollars, in all $139.60, leaving a balance due of $285.10. In payment of this balance he took her note for $14.10, which was afterwards paid, and also an acknowledgment of an agreement to pay a policy loan of $271, together with interest thereon at five per cent per annum as follows:

"Des Moines, Iowa, February 11, 1903. $271 no-100.

I, Susan E. Reigel, hereby acknowledge that the Des Moines Life Insurance Company of Des Moines, Iowa, has loaned me two hundred seventy-one no-100 Dollars, being part premium on policy No. 11637 issued to me by said company on the 14th day of Feb., 1903, for $1000 at age 37 on the 15 payment life plan, which amount with interest annually at five per cent. shall be a lien on said policy until extinguished by the surplus apportioned thereto, or is otherwise paid to the

company on or before the 21st day of November, 1909.
SUSAN E. REIGEL,
Address, Hutsonville, Illinois.
Witness H. O. Skinner.''

At the same time appellee signed an application for
an exchange of policies which contained the following:
''I hereby apply to said company for a policy loan of
$271 no-100 secured by the reserve on said policy to
supply premium deficiency.'' Skinner testified that at
the time of the exchange of policies he explained to
appellee the nature of the transaction and that she
signed the above note or agreement for the payment
of $271 in his presence. There was also proof tending
to show that a receipt signed by appellant through its
agent Skinner, acknowledging the receipt of appellee's
old policy and an application for an exchange of poli-
cies, also for a policy loan of $271 and the cash
premium note of $14.10, was delivered to the husband
of appellee and afterwards appeared among the papers
in the hands of her attorney.

It may be here stated that the transactions relating
to the exchange of policies with which this suit is con-
cerned, are the same as those referred to in the case
of Morton T. Reigel, husband of appellee against this
appellant, where a similar exchange of policies was
made, in which case an opinion was filed at the October
term, 1911, of this court.   (165 Ill. App. 448.)

Appellee testified that she signed the note for $14.10
and supposed she signed the application for the ex-
change but was positive that she did not sign the note
for $271.   She stated the arrangement with Skinner
was that she was to surrender the old policy, get the
new one in its place, pay $42.47 a year for five years
and get benefits from the date of the original policy;
that the understanding was the new policy was to be
the same as if it bore the date of the original policy;
that she was not asked to give the note in question;
that Skinner gave her husband some kind of a receipt

for the policies and that she thought there was just one receipt which covered both policies, but that she never saw the same.

Expert testimony was introduced by appellant, tending to show that what purported to be the signature of appellee to the note or agreement in question, was written by the same person who signed the application for exchange of policy and the note for $14.10 admitted by appellee to have been signed by her. No proof was introduced of fraud, circumvention or misrepresentation used by appellant's agent in procuring the exchange of policies or appellee's signature to any of the papers. It will thus appear that the evidence on the question of the execution of the note in question by appellee was extremely close, if indeed the preponderance was not really in favor of appellant. It therefore became necessary that the jury should be accurately instructed as to the law governing this branch of the case.

Instruction No. 7 given for appellee told the jury that the introduction of the note in evidence, was only *prima facie* evidence of such execution and indebtedness; that unless they found after a full consideration of all the evidence that plaintiff at the time she is alleged to have signed said note, knew and understood the nature of the paper she was signing and knowingly signed it, and that she was then indebted to the defendant for the amount named therein, said note should not be allowed as a set-off against the demand of appellee on the policy sued on. This instruction was erroneous for two reasons. First, because it states the law to be that the note introduced in evidence was only *prima facie* evidence of the execution and indebtedness, and to give it effect in this case required additional proof that appellee knew the nature of the paper when she signed it and knowingly signed it. Second, because the instruction as a whole might readily lead the jury to believe that notwithstanding it appeared appellee

Reigel v. Des Moines Life Ins. Co., 169 Ill. App. 106.

signed the note in question, yet the burden was on appellant to show that she, at the time of signing, understood its nature and knowingly signed it.

In Hartford Life Ins. Co. v. Gray, 80 Ill. 28, the following language is used: ''We are of opinion when the genuineness of a signature to an instrument is established, it affords *prima facie* evidence that the contents of the instrument were known to the subscriber, and that it is his act, and hence that the burden is upon those who assert the contrary, to make such proof as shall overcome the *prima facie* evidence.''

In Jones v. Abbott, 235 Ill. 220, it is said: ''It is strongly urged by appellants that the receipt or agreement in question was signed by Hampelman without knowledge on his part that it contained the clause as to the distribution of his property after his death, and because it was represented to him that the instrument was merely a receipt for the property turned back to him by the trustees. The genuineness of the signature to the receipt was fully established. The instrument affords therefore *prima facie* evidence that its contents were known to the subscriber and that it was his act. The burden rests upon appellants to overcome this *prima facie* showing.''

Instructions Nos. 1, 2, 3, 9, 10 and 11 offered by appellant, were so modified by the court, as to apparently place the burden upon appellant of proving that the note was knowingly signed by appellee. If, as matter of fact, the note was signed by her, then as we have above seen, the law is that the burden of proof was upon appellee to overcome the *prima facie* case so made and show that she did not knowingly execute the instrument.

For the errors in instructions above named, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*